UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AKIN ERDOGAN | CIVIL ACTION |
| VERSUS | NO. 19-11391 |
| NOUVELLE SHIPMANAGEMENT CO., ET AL. | SECTION "R" (1) |

**ORDER AND REASONS**

Before the Court is defendant Assuranceforeningen Gard-Gjensidig's ("Gard") motion to compel arbitration and stay this litigation.[1] Plaintiff Akin Erdogan opposes the motion.[2] For the following reasons, the Court grants Gard's motion, and stays this litigation pending completion of arbitration.

## I. BACKGROUND

This case arises from an alleged accident aboard the M/V YASA NESLIHAN. Plaintiff, a Turkish national, alleges in his complaint that he sustained injuries while working aboard the YASA NESLIHAN while it was in the Mississippi River within the Eastern District of Louisiana.[3] He brings claims for damages under General Maritime Law against Nouvelle

---

[1] R. Doc. 17.
[2] R. Doc. 21.
[3] R. Doc. 1 at 2-3 ¶ 8.

Shipmanagement Co., the ship's alleged owner, and Ya-Sa Gemi Isletmeciligi Ve Ticaret A.S. ("Ya-Sa"), the ship's alleged commercial manager.[4] He also brings suit against Gard, the Protection & Indemnity ("P&I") and Defense insurer of Ya-Sa and Nouvelle, under Louisiana's direct-action statute, La. Rev. Stat. § 12:1269.[5]

Now, defendant Gard moves to compel arbitration and stay the litigation. Gard contends that an arbitration clause in its insurance agreement with defendants Nouvelle and Ya-Sa requires plaintiff to arbitrate his claim in Oslo, Norway.[6] Gard asserts, and plaintiff does not dispute, that the insurance contract at issue consists of a Certificate of Entry ("COE") covering the YASA NESLIHAN,[7] and Gard's 2016 Club Rules ("the Rules"),[8] which are incorporated by reference in the COE.[9]

Gard's Rule 91 contains the arbitration clause. The Rule provides: "Unless otherwise agreed, disputes between the Association and a Member or a former Member or any other person arising out of the contract of

---

[4] R. Doc. 1 ¶¶ 1-2, 11, 14.
[5] *Id.* ¶ 3. The Louisiana statute enables claimants to file direct suit against the insurers of parties from whom they seek recovery. La. Rev. Stat. § 12:1269.
[6] R. Doc. 17-3 at 1-5.
[7] R. Doc. 17-5.
[8] R. Doc. 17-6.
[9] R. Doc. 17-5 at 2.

insurance or these Rules shall be resolved by arbitration."[10] The Rule further provides that "[a]rbitration proceedings shall take place in Oslo."[11]

Plaintiff opposes Gard's motion and argues that he is not bound by the arbitration clause in Gard's insurance contract with Nouvelle and Ya-Sa.[12] He seeks to proceed as a direct-action plaintiff in this litigation. The Court considers the parties' arguments below.

## II. LEGAL STANDARD

Federal courts apply a heavy presumption in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); 9 U.S.C. § 2. Doubts about the scope of arbitrability are construed in favor of arbitration. *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) (citing *Mar-Len of La., Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985).

When a party seeks to compel arbitration outside of the United States, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention") governs. *Todd v. S.S. Mut. Underwriting Ass'n (Bermuda), Ltd.*, 601 F.3d 329, 332 (5th Cir. 2010). The U.S. Congress

---

10     R. Doc. 17-6 at 3.
11     *Id.*
12     R. Doc. 21.

3

implemented the Convention through the Convention Act, Pub. L. 91-368, 84 Stat. 692 (1970). Under the Convention Act, courts may compel arbitration "in accordance with [an] agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206; *see Todd*, 601 F.3d at 332 n.4. The Convention Act incorporates the Federal Arbitration Act ("FAA") to the extent that the two do not conflict. 9 U.S.C. § 208; *Todd*, 601 F.3d at 332. The FAA authorizes a district court to enforce stays pending arbitration. 9 U.S.C. § 3.

Under the Convention and the Convention Act, courts "[s]hould compel arbitration if (1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen." *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002). If all four criteria are satisfied, "the Convention requires district courts to order arbitration." *Id.*; *see also Havard v. Offshore Specialty Fabricators, LLC*, No. 14-824, 2019 WL 6218648, at *2 (E.D. La. Nov. 21, 2019).

Further, arbitration agreements, if found enforceable under the Convention, may be enforceable against nonsignatories to the agreement. The Fifth Circuit has held that "an arbitration clause in a contract [may]

4

provide[] an 'agreement in writing' that satisfies the Convention, even when the party being forced to arbitrate has not signed the contract." *Todd*, 601 F.3d at 334 n.11 (citing *Sphere Drake Ins. PLC v. Marine Towing, Inc.*, 16 F.3d 666, 669-70 (5th Cir. 1994)). To determine whether nonsignatories are bound to arbitration agreements under the Convention, the Fifth Circuit directs courts to consider three factors. First, the Court must decide if the terms of the agreement clearly address whether nonsignatories can be bound to arbitrate. *Id.* at 336. Second, if the agreement's binding effect on nonsignatories is unclear, the Court proceeds to ask which law to apply to that determination, and to apply the law accordingly. *Id.*; *see also Authenment v. Ingram Barge Co.*, 878 F. Supp. 2d 672, 678 (E.D. La. 2012) (proceeding to the choice-of-law analysis because "it is not clear from the applicable Rules . . . whether a third party can be bound to arbitrate under the contract"). This second step is not necessary if the terms of the agreement are clear. As the Fifth Circuit explained in *Todd*, 601 F.3d at 336, "if the terms of an agreement clearly address whether a nonsignatory can be bound to arbitrate, then courts need not inquire whether nonsignatories can be bound under . . . other doctrines." *See also Authenment*, 878 F. Supp. 2d at 677-78 (citing *Todd* and explaining that an agreement's clear statement to bind third parties obviates the need for further inquiry). Third, the court

considers whether plaintiff's claims are within the scope of the arbitration clause. *Todd*, 610 F.3d at 336; *see also Todd v. S.S. Mut. Underwriting Ass'n, Ltd.*, No. 08-1195, 2011 WL 1226464, at *4 (E.D. La. Mar. 28, 2011) (applying the *Todd* factors on remand from the Fifth Circuit). "[W]henever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration." *Authenment*, 878 F. Supp. 2d at 682 (quoting *Hornbeck*, 981 F.2d at 755).

## III. DISCUSSION

The Court first considers whether the Convention covers Gard's arbitration agreement with Nouvelle and Ya-Sa. Here, the insurance contract governing Gard's coverage of the YASA NESLIHAN satisfies the four Convention criteria. First, the COE and 2016 Rules constitute an "agreement in writing" to arbitrate disputes arising out of the insurance contract. *Francisco*, 293 F.3d at 273. Second, the agreement provides for arbitration in Norway,[13] a signatory to the Convention.[14] Third, the agreement "arises out of a commercial legal relationship" in the form of an

---

[13] R. Doc. 17-6 at 3.
[14] Contracting States, *New York Arbitration Convention* (2021), https://www.newyorkconvention.org/countries.

6

insurance contract between Gard and the other defendants.[15] *Francisco*, 293 F.3d at 273. Finally, none of the parties to the agreement is an American citizen. The parties do not dispute that Gard is a Norwegian insurer; Nouvelle is a Marshall Islands company; and Ya-Sa is a Turkish company.[16]

Thus, under the Convention and the Convention Act, Gard could compel Nouvelle and Ya-Sa to arbitrate disputes in Oslo. The question here is whether *plaintiff*, as a nonsignatory to the contract containing the arbitration clause, is also bound.

To decide whether plaintiff is bound, the Court first considers whether the terms of the agreement clearly state that nonsignatories are bound to arbitrate. *Todd*, 601 F.3d at 336. The arbitration provision in Gard's Rule 91 covers "disputes between the Association and a Member or a former Member *or any other person* arising out of the contract of insurance."[17] In *Authenment*, the court found that a nonsignatory was bound to arbitrate under a nearly identical arbitration clause. 878 F. Supp. 2d at 678. There, the insurer's arbitration Rule covered "any difference or dispute . . . between a Member or former Member *or any other person* claiming under these Rules." *Id.* The court held that the Rule "clearly contemplated enforcing the

---

[15] R. Doc. 17-5.
[16] R. Doc. 26 at 2.
[17] R. Doc. 17-6 at 3 (emphasis added).

7

arbitration agreement against third parties." *Id.*; *see also Havard*, 2019 WL 6218648, at *3 (finding that a plaintiff-seaman was bound to arbitration as a nonsignatory to the agreement between his shipowner-employer and its P&I insurer). Because Gard's Rule 91 expressly covers "disputes between [Gard] and . . . any other person," the Court finds that the agreement clearly requires nonsignatories to arbitrate any claims arising out of the insurance contract.

Because the terms of the agreement are clear, the Court need not consider *Todd*'s inquiry into "what law should apply to determine whether [plaintiff] must arbitrate as a nonsignatory." 601 F.3d at 336. Accordingly, the Court proceeds to consider whether plaintiff's claims fall within the scope of the arbitration clause.

If plaintiff's claims fall within the scope of the arbitration clause, the Court must stay these proceedings pending arbitration. *Hornbeck*, 981 F.2d at 754-55; 9 U.S.C. § 3. In determining the scope of arbitration clauses, the Fifth Circuit distinguishes between broad and narrow clauses. It has held that "arbitration clauses containing the 'any dispute' language . . . are of the broad type." *Hornbeck*, 981 F.2d at 755 (citing *Sedco v. Petroleos Mexicanos Mexican Nat'l Oil*, 767 F.2d 1140, 1145 n.10 (5th Cir. 1985)). If the clause is broad, "the action should be stayed[,] and the arbitrators permitted to decide whether the dispute falls within the clause." *Id.* at 754 (holding that, given

8

the broad arbitration clause, the arbitrator must decide if plaintiff's indemnity/contribution claim is within the reach of the agreement). If the clause is narrow, the court determines whether the dispute falls within the clause. *Id.*

Gard's arbitration clause purports to cover (1) any dispute, (2) between Gard and any person, (3) arising out of the insurance contract.[18] The clause facially covers plaintiff's claims: plaintiff is pursuing an action against Gard, arising out of the insurance contract with Nouvelle and Ya-Sa. The Court finds that the agreement contains a broad arbitration clause, which covers plaintiff's claims. Because the agreement applies to nonsignatories, and because plaintiff's claims fall within the scope of the arbitration clause, the Court must stay this litigation pending arbitration under 9 U.S.C. § 3.

Plaintiff's other arguments against arbitration fail to overcome the heavy presumption in favor of arbitration. For example, plaintiff argues that Gard, in its Rules, opted out of direct-action disputes, like plaintiff's.[19] Specifically, plaintiff contends that Gard's Rule 90, which stipulates that "the provisions of [Norway's] Insurance Contracts Act of 16th June 1989 [ICA] shall not apply,"[20] indicates that Gard has declined to arbitrate direct-action

---

[18] R. Doc. 17-6 at 3.
[19] R. Doc. 21 at 4-8.
[20] R. Doc. 17-6 at 3.

9

claims.[21] Plaintiff thus argues that Gard does not hold a valid agreement to arbitrate plaintiff's claim.[22]

Given the broad arbitration clause in the agreement, the question of whether Gard may ultimately defeat a direct-action claim by way of its ICA opt-out is for the arbitrator to decide. As the Fifth Circuit has made clear, ""[i]f the [arbitration] clause is broad, the action should be stayed and *the arbitrators permitted to decide whether the dispute falls within the clause.*" *Hornbeck*, 981 F.2d at 754 (citing *Sedco*, 767 F.2d at 1145 n.10) (emphasis added); *see also Authenment*, 878 F. Supp. 2d at 682. Thus, the Court's inquiry is limited to the scope of the arbitration clause itself. Once the Court decides that the clause is broad, as Gard's is here, it must send the matter to arbitration. It does not decide whether particular disputes, like plaintiff's, are covered, based on other provisions in the contract. Accordingly, whether plaintiff has a right of action as a direct-action claimant against Gard is a question for the arbitrator, not this Court.

Additionally, plaintiff argues that Gard should be estopped from enforcing its arbitration clause under a direct-benefits estoppel theory.[23] He

---

21 R. Doc. 21 at 5.
22 *Id.* at 8.
23 *Id.* at 8-9.

10

asserts that Gard cannot both compel arbitration against a direct-action plaintiff and simultaneously opt out of direct-action claims.[24]

Plaintiff's estoppel theory is misplaced. While the Fifth Circuit recognizes direct-benefits estoppel when enforcing arbitration agreements, the theory operates only to compel a nonsignatory to arbitrate. Under the theory, a nonsignatory is estopped from evading arbitration if it is otherwise "exploit[ing] the agreement containing the arbitration clause." *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 518 (5th Cir. 2006) (quoting *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 353 (5th Cir. 2003)). Here, Gard is a signatory seeking to enforce its own arbitration clause. Gard thus cannot be estopped from enforcing the clause under a direct-benefits theory. Indeed, it is *plaintiff* who seeks to "repudiate[e] the arbitration clause[] in [a] contract[] which [he] otherwise seek[s] to enforce." *Todd*, 2011 WL 1226464, at *7. Plaintiff's novel estoppel theory therefore lacks merit.

Because Gard's insurance agreement with Nouvelle and Ya-Sa is enforceable under the Convention, and because plaintiff is bound as a nonsignatory to the agreement, the Court grants the motion and stays this litigation pending arbitration.

---

[24] *Id.*

## IV. CONCLUSION

Accordingly, the Court GRANTS Gard's motion. This matter is STAYED, and plaintiff is compelled to arbitrate his claims against Gard in Oslo, Norway.

New Orleans, Louisiana, this __23rd__ day of June, 2021.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE